HILLIKER *v.* NELSON.

1. MOTOR VEHICLES—STOP SIGNS—NEGLIGENCE.
   Defendant motorist who failed to heed ''Stop'' sign before driving on through highway *held*, guilty of negligence.

2. APPEAL AND ERROR—DIRECTED VERDICT.
   Testimony must be viewed in light most favorable to plaintiff on appeal from verdict directed for defendant at close of plaintiff's case, and defendant introduced no testimony.

3. MOTOR VEHICLES—DIRECTED VERDICT—INTERSECTION ACCIDENT—CONTRIBUTORY NEGLIGENCE—THROUGH HIGHWAY.
   Plaintiff, a motorist on a through highway, who observed defendant motorist approaching on intersecting street twice before latter entered and started to turn acute angle onto through highway and travel in same direction as plaintiff was not guilty of contributory negligence as a matter of law where defendant did not stop as required by law and as assumed he would do by plaintiff.

Appeal from Kent; Verdier (Leonard D.), J. Submitted October 2, 1934. (Docket No. 29, Calendar No. 37,926.) Decided December 10, 1934.

Case by George A. Hilliker against Frank Nelson for injuries sustained in an intersection collision of automobiles. Directed verdict and judgment for defendant. Plaintiff appeals. Reversed and new trial granted.

*Irving H. Smith,* for plaintiff.

*Linsey, Shivel & Phelps,* for defendant.

BUTZEL, J. George A. Hilliker alleges that on October 15, 1932, he was driving in a northwesterly

direction on State trunk line M-37, and that as he approached the village of Kent City he slowed down to a rate of 20 to 25 miles per hour. M-37, running diagonally southeast to northwest, intersects the main street of Kent City, which runs north and south. Main street is paved north of M-37, the paved surface being about 45 feet wide, but south of M-37 it is graveled and much narrower. While the width of M-37 is 18 feet, at the point of the intersection with Main street there are broad approaches or aprons, on the northeasterly and northwesterly corners, and the corners are filled in with concrete, creating a wide surface, of which the outer portions are concave in form, so as to afford ample space for turns at the intersection. The base or portion of each of these approaches abutting M-37 is approximately 60 feet wide, when measured from the extreme easterly point of the east approach to the east edge of Main street, and from the extreme westerly point of the west approach to the west edge of Main street. From the easterly end of the east approach to the extreme westerly end of the west approach, where Main street runs into M-37, the distance is approximately 180 feet. Railroad tracks, consisting of a main line and a switch track south of the main line, cross Main street north of M-37. It is 64 feet from the northerly edge of M-37 up to the first rail of the switch track, measured in a straight line. Immediately south of the southerly rail of the switch track, and on the west side of Main street, facing north, is a "Stop" sign. This sign is about 60 feet north of the northerly edge of M-37. There is also a "Slow" sign on M-37 not far from the intersection.

Plaintiff claims that as he approached the intersection of the two highways, at a point about 175 feet east of the middle of the intersection, he noticed

defendant approaching in his car along Main street in a southerly direction towards M-37. Plaintiff further testified that he was familiar with that particular intersection, and had knowledge of the "Stop" sign on Main street before the intersection, and that he drove on into the intersection in the belief that defendant would heed the mandate of the "Stop" sign; that as he approached the middle of the intersection, he observed defendant for the second time, and at this time defendant was coming across the switch track just before the "Stop" sign, at a point approximately 60 feet from the northerly edge of M-37, traveling at about 25 miles per hour; that he nevertheless still believed defendant would come to a stop before the intersection, and therefore continued to drive through the intersection; that when he again looked to the right an instant later defendant's car was almost upon him; that he then immediately turned toward the south, in the hope of avoiding an accident, but instead ran into defendant's car with such force that his own car was badly damaged and he sustained personal injuries. The testimony further indicates that at the time of the collision defendant was turning into M-37 in order to go in a northwesterly direction on M-37, the same direction in which plaintiff was traveling, and that the collision occurred in the most westerly part of the west approach to the intersection. The afternoon was clear, the pavement dry, and there were no obstructions of any kind on the highway.

There is no doubt but that defendant was guilty of negligence in not heeding the direction of the "Stop" sign, as required by law. He, however, claims that plaintiff had ample time to avoid the accident, and that if plaintiff had made proper observations and seen defendant's car turning into M-37 ahead of him, he could have come to a stop

within 12 to 15 feet and thus avoided the accident. Defendant claims that there were absolutely no other cars or obstructions in the way, so that defendant's car was in plaintiff's view all the time, and ordinary care on his part would have prevented the accident. Plaintiff, however, claims that he looked three distinct times, once just before he entered the intersection, again when he was in the middle of the intersection, and a third time when it was too late to avoid the accident, and that he could not keep his eye continually on defendant, but had to look in other directions as well.

The trial judge held that plaintiff was guilty of contributory negligence as a matter of law, and directed a verdict for defendant at the conclusion of the testimony on plaintiff's behalf. Viewing the testimony in the light most favorable to the plaintiff, as we are bound to do on a directed verdict, where no testimony is introduced on behalf of defendant, we believe that plaintiff made out a case for the jury's consideration. When plaintiff neared the middle of the intersection, he observed defendant for the second time. At this time defendant was just approaching the ''Stop'' sign, approximately 60 feet from the intersection, and was driving at the rate of about 25 miles per hour. Even though defendant did not stop at the sign, he could still have come to a stop at some point before the north line of M-37. Assuming that defendant would heed the direction of the ''Stop'' sign, plaintiff drove on through the intersection, momentarily taking his eyes off defendant in order to look ahead. The collision occurred within the next instant. The sole question is whether plaintiff acted as a reasonably prudent man under the circumstances in assuming that defendant would obey the law and stop before the intersection, and in therefore continuing across

the intersection. This was at least a question for the jury. *Haynes* v. *Clark,* 252 Mich. 295, is very similar to the case at bar. In that case we stated:

"The testimony shows that plaintiff looked before crossing the street and while he was crossing and then immediately before the collision. It differs from *Kerr* v. *Hayes,* 250 Mich. 19, and the other cases arising out of accidents at street crossing intersections, referred to in defendants' brief, for in the present case defendant-driver was bound by the city ordinance to come to a full stop at the entrance to the street crossing, and, under the circumstances, he had a right to assume that defendants' car would come to a stop. He further testified that he looked in the direction from which Mrs. Clark was coming a number of times. The court properly refused to direct a verdict in favor of defendants on the ground that plaintiff was guilty of contributory negligence. It was a question for the jury."

In *Townshend* v. *Reader,* 252 Mich. 465, we held:

"The plaintiff's testimony shows that he was traveling north on a through street. He saw the defendant approaching on a side street from the east. He knew the ordinance gave him the right-of-way and required the defendant to stop his truck before entering the intersection and wait until traffic on the through street had passed. He had a right to assume that the defendant would obey the law. * * * If, as he testified, there was no circumstance indicating that the defendant was not going to stop, the plaintiff was not negligent in proceeding to cross. * * * The court did not err in refusing to hold that he was guilty of contributory negligence as a matter of law."

Also, see, *Grodi* v. *Mierow,* 244 Mich. 511; *Swainston* v. *Kennedy,* 253 Mich. 518; *Weil* v. *Longyear,* 263 Mich. 22.

We believe that there was a question for the jury and that there should not have been a directed verdict for defendant.

Judgment reversed, with costs to plaintiff, and the case remanded for a new trial.

NELSON SHARPE, C. J., and POTTER, NORTH, FEAD, WIEST, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.